UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL DELACRUZ,<br>　　　　Plaintiff,<br>　v.<br>MIKE ANTLE, et al.,<br>　　　　Defendants. | Case No. 5:14-cv-05336-EJD<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 254, 255, 257, 259, 261, 294, 295 |

Plaintiff Daniel Delacruz, Sr. ("Plaintiff") maintains in a First Amended Complaint ("FAC") that an assorted group of individuals and entities conspired to deny him admission to the State Bar of California. That assorted group moves to dismiss the FAC in a series of motions now before the court. Dkt. Nos. 254, 255, 257, 259, 261, 294, 295. Plaintiff opposes.

Federal jurisdiction arises under 28 U.S.C. § 1331. Having reviewed the relevant pleadings, the court finds that Defendants' alleged conduct constitutes protected petitioning activity and is immune under the Noerr-Pennington doctrine. The Motions to Dismiss will therefore be granted and Plaintiff's federal causes of action will be dismissed without leave to amend for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff "is a disabled Latino male . . . ." FAC, at ¶ 4. After obtaining a law degree and passing both the Multistate Professional Responsibility Exam and the State Bar exam, Plaintiff received an adverse moral character determination from the Committee of Bar Examiners (the

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
1

"State Bar") in 2011.  Id. at ¶ 34; Req. for Judicial Notice ("RJN"), Dkt. No. 93, at Ex. A.[1]  He appealed from that determination, and "an administrative moral character determination trial was held around May 14, 2012, to about May 18, 2012."  FAC, at ¶ 35.  A judge of the State Bar Court found against Plaintiff in a written opinion filed on August 9, 2012.  RJN, at Ex. A.  Plaintiff sought review of the August 9th opinion, and a three-judge panel of the State Bar Court's Review Department also found against Plaintiff on August 7, 2013.  RJN, at Ex. B.

Plaintiff filed a petition for review of the State Bar Court's decisions in the California Supreme Court, which was denied on October 30, 2013.  RJN, at Exs. C, D.  An ensuing petition for writ of certiorari to the United States Supreme Court was denied on April 28, 2014.  FAC, at ¶ 37; RJN, at Ex. E.

The causes of action in this case are based primarily on Defendants' either direct or indirect involvement in the State Bar proceedings.  To that end, Plaintiff alleges Defendants affiliated with Tanimura & Antle, Inc. ("TAI"), his former employer, "failed to prevent" certain information from be disseminated or sent to the State Bar.  FAC, at ¶¶ 47, 49, 53.  He alleges that Carmen Ponce, an assistant general counsel TAI, retaliated against him by making statements to the State Bar, and that another unknown affiliate referred to as "John Doe" fabricated certain information disclosed during the State Bar proceedings.  Id. at ¶¶ 58, 66-73.  He also alleges that attorneys James Sullivan and Richard Harray voluntarily provided negative information about Plaintiff to the State Bar.  Id. at ¶¶ 76-78, 83-89, 98-99.

Plaintiff makes similar allegations against individuals affiliated with Sayler Legal Services Inc., another former employer.  Id. at ¶101.  Plaintiff alleges they colluded with TAI and the State Bar to deny him a law license.  Id. at ¶ 112.  He further alleges Sayler "disseminated a retaliatory questionnaire regarding Plaintiff to the State Bar so that Plaintiff's application for a license to practice law would be denied."  Id. at ¶ 131.

---

[1] The previously court took judicial notice of the State Bar decisions.  It does so again here.  See Fed. R. Evid. 201(b); see also United States ex rel. Lee v. Corinthian Colls., 655 F.3d 984, 999 (9th Cir. 2011).

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

2

As to Raquel Ramirez and Joshua Sigal, Plaintiff alleges they provided false or retaliatory information to the State Bar. Id. at ¶¶ 143, 160, 163, 165.

Plaintiff contends Defendants' conduct "induced the State Bar to attempt to extort Plaintiff out his property rights of a law license by threatening for Plaintiff to abandon his law license appeal," "induced the State Bar to mail Plaintiff a letter with an attached Authorization to Release Medical Records," and "induced the State Bar to have Plaintiff waive his medical privacy and disability rights by inquiring if Plaintiff would stipulate to having an independent medical evaluation performed." Id. at ¶¶ 169, 170, 172. He also alleges that as a result of Defendants' conduct, the State Bar concluded that Plaintiff had engaged in acts of moral turpitude and "urged the California Supreme Court to deny Plaintiff's petition for review . . . ." Id. at ¶¶ 179, 183. Furthermore, Plaintiff alleges he was denied employment at the State Bar due to the defendants' "voluntary communications . . . that impugned Plaintiff's moral character." Id. at ¶ 197.

Plaintiff initiated this action against the current defendants and several others on December 4, 2014. On September 29, 2015, the court ruled on various motions directed and dismissed all causes of action asserted in the original complaint, some without leave to amend, some with leave to amend, and some without prejudice. Dkt. No. 250.

Plaintiff then filed the FAC. Dkt. No. 253. He asserts four federal causes of action against all Defendants: (1) disability discrimination and retaliation, (2) discrimination and retaliation based on race, color and religion, (3) deprivation of civil rights, and (4) conspiracy to interfere with civil rights.

These motions followed.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion challenges subject matter jurisdiction and may be either facial or factual. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. Id. On a facial challenge, all

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
3

material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. Thornhill Publ'g Co. v. General Tel. Elec., 594 F.2d 730, 733 (9th Cir. 1979).

"A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

Also, the court usually does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. See Lee v. City of Los

Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

### C. Pro Se Pleadings

Where, as here, the pleading at issue is filed by a plaintiff proceeding pro se, it must be construed liberally. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). In doing so, the court "need not give a plaintiff the benefit of every conceivable doubt" but "is required only to draw every reasonable or warranted factual inference in the plaintiff's favor." McKinney v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974). The court "should use common sense in interpreting the frequently diffuse pleadings of pro se complainants." Id. But pro se parties must still abide by the rules of the court in which they litigate. Carter v. Comm'r of Internal Revenue, 784 F.2d 1006, 1008 (9th Cir. 1986).

A pro se complaint should not be dismissed unless the court finds it "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972).

## III. DISCUSSION

### A. Preliminary Issues Raised by Plaintiff

Plaintiff makes several arguments in an effort to prevent consideration of the motions to dismiss on their substance, all of which are misplaced.

First, Plaintiff argues the motions should be denied for failure to comply with Civil Local Rule 7-2(d), which states that "[e]ach motion must be accompanied by affidavits or declarations pursuant to Civil L.R. 7-5." Rule 7-5, in turn, states that "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record." When taken together, these rules do not require that declarations be submitted with every motion; instead, declarations are only necessary to support asserted facts. Since Plaintiff does not identify exactly which factual contentions are unsupported by an affidavit or declaration other than noting the lack of declarations in general, this argument is ineffective as a basis to deny the motions outright.

Second, Plaintiff contends Defendants violated Federal Rule of Civil Procedure 11 in

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

5

various ways. As the court understands the argument, Plaintiff claims Defendants presented contradictory arguments by seeking to hold Plaintiff to the Rule 8 pleading standard, but then arguing that conspiracy claims must meet a heightened standard. Having reviewed the pleadings, however, the court finds no such contradiction, let alone one that violates Rule 11's prohibition on improper pleadings. The case cited by Plaintiff in support of this argument, Burroughs Adding Mach. Co. v. Rockford Milling Mach. Co., 292 F. 550 (7th Cir. 1923), has nothing to do with Rule 11 or pleading standards, and is therefore inapposite.

Third, Plaintiff believes defendants violated Rule 11 by attempting to "re-litigate" certain issues contrary to principles of res judicata and collateral estoppel, such as application of the Rooker-Feldman doctrine, the Noerr-Pennington doctrine, and the absolute litigation privilege under California Civil Code § 47. Contrary to Plaintiff's representation, however, the court did not directly address any of these issues in relation to the remaining Defendants and no decision on those topics was thereby provided in relation to them. In any event, neither res judicata nor collateral estoppel can arise from orders or judgment entered in the same action. See Sandpiper Vill. Condo. Ass'n v. Louisiana-Pacific Corp., 428 F.3d 831, 849 n. 24 (9th Cir. 2005) ("Central to the concepts of res judicata and collateral estoppel is the principle that only parties to a *prior action* and parties in privity with parties to a *prior action* are barred from relitigating claims or issues in a subsequent action."). And since the amended complaint replaces the original one, there is no reason to find that Defendants lost the ability to assert any argument merely because they previously made it against a prior pleading. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original.").

Fourth, Plaintiff argues Defendants violated Rule 11 by re-filing motions to dismiss because their "proper recourse was to appeal this Court's Order with the Ninth Circuit Court of Appeal instead of relitigating the same issues in their second motion to dismiss." That is incorrect. "If a district court's order does not dispose of all claims against all parties, there is no 'final order' within the meaning of 28 U.S.C. § 1291" to appeal. Ethridge v. Harbor House Rest., 861 F.2d 1389, 1402 (9th Cir. 1988). The prior order addressing motions to dismiss did not finally

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
6

decide all issues against all parties, as even Plaintiff recognizes. As such, Defendants' proper recourse was to respond in some fashion to the FAC, which they have done.

### B. Dismissal Issues Raised by Defendants

#### i. Rooker-Feldman

Under the Rooker-Feldman doctrine, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." Noel v. Hall, 341 F.3d 1148, 1154 (9th Cir. 2003). "A party disappointed by a decision of a state court may seek reversal of that decision by appealing to a higher state court" but may not "appeal to a federal district court, even if a federal question is present or if there is diversity of citizenship between the parties." Id. at 1155.

The Rooker-Feldman doctrine also prohibits district courts from hearing de facto appeals of state-court decisions. A case can be classified as a de facto appeal "when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court." Id. at 1156. "In contrast, if 'a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.'" Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013) (quoting Noel, 341 F.3d at 1164). "Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff *also* alleges a legal error by the state court." Id. (emphasis preserved).

Furthermore, the district court lacks jurisdiction to entertain issues which are "inextricably intertwined" with a de facto appeal. Id. at 1158. Notably, however, the "inextricably intertwined" concept "is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the Rooker-Feldman analysis." Bell, 709 F.3d at 897. "Should the action not contain a forbidden de facto appeal, the Rooker-Feldman inquiry ends." Id.; Noel, 341 F.3d at 1158 ("Only when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play.").

Here, several Defendants argue the Rooker-Feldman doctrine precludes federal jurisdiction

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
7

over Plaintiff's claims because they are "inextricably intertwined" with the denial of Plaintiff's application for bar admission. This argument is an attractive one on its face because the court cited Rooker-Feldman as a possible alternative basis for the dismissal of claims against previously-named defendants, all of which of would have required an "undoing" of decisions made in state proceedings to impose liability. See Bianchi v. Rylaarsdam, 334 F.3d 895, 901 (9th Cir. 2003); see also Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001) ("Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence being called upon to review the state court decision.'"). Moreover, Plaintiff appears to assert damages from the state proceedings. For example, Plaintiff alleges in connection with this second cause of action for discrimination and retaliation that he was "damaged by being deprived of a livelihood as a paralegal, administrative assistant, legal secretary, and as a licensed attorney." FAC, at ¶ 218.

But a closer review of the current claims reveals why they are not jurisdictionally problematic under Rooker-Feldman. Indeed, the difference between the current claims and the dismissed claims is that the former do not require this court to review the correctness of the state court proceedings in the same way as the latter did. In other words, Plaintiff is now asserting in the FAC legal wrongs by adverse parties rather than a legal error by the State Bar and the state courts. The current iteration of this action is therefore not a prohibited de facto appeal under Rooker-Feldman. And in the absence of such a classification, the court need not consider whether the issues presented are "inextricably intertwined" with a de facto appeal.

    ii. **Noerr-Pennington**

        a. **Defendants' Alleged Conduct is Immunized**

"The Noerr-Pennington doctrine derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 643-44 (9th Cir. 2009) (quoting Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006)). It "stands for a generic rule of statutory construction, applicable to any statutory

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

8

interpretation that could implicate the rights protected by the Petition Clause." Sosa, 437 F.3d at 931. Under the doctrine's rule of statutory construction, federal statutes are interpreted "so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." Id.

The scope of governmental proceedings to which Noerr-Pennington applies is broad. Though it originally arose in the antitrust context, the Supreme Court "subsequently expanded the holding of Noerr to include activities aimed at the executive and judicial branches of government," whether federal or state. Kottle v. Nw. Kidney Ctrs., 146 F.3d 1056, 1059 (9th Cir. 1998); Cal. Pharmacy Mgmt., LLC, 669 F. Supp. 2d 1152, 1167 (C.D. Cal. 2009) (explaining the Noerr-Pennington doctrine "applies to petitions before both state governments and the federal government."); accord Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government."). It "applies equally in all contexts." White v. Lee, 227 F.3d 1214, 1231 (9th Cir. 2000).

Noerr-Pennington immunity extends to anything "fairly described as petitions" directed to the government, and conduct incidental to a petition. Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1184 (9th Cir. 2005); Sosa, 437 F.3d at 931-32 (holding the court must give adequate "breathing space" when determining whether conduct falls under Noerr-Pennington protection). It has been applied to virtually every type of tort, including civil rights claims. Ungureanu v. A. Teichert & Son, No. CIV S-11-0316 LKK GGH PS, 2012 WL 1108831, at *7 (E.D. Cal. Apr. 2, 2012) (citing Boulware v. State of Nev., Dep't of Human Res., 960 F.2d 793, 800 (9th Cir. 1992)).

Here, the court easily finds that proceedings before the State Bar Court can implicate Noerr-Pennington. The State Bar Court, though not a court of law, is part of the State Bar, a "constitutional entity within the judicial article of the California Constitution," whose service to the California Supreme Court is "an integral part of the judicial function." Obrien v. Jones, 23 Cal. 4th 40, 48 (2000). It is therefore unquestionably a part of California state government.

The court also finds that Defendants' purported activities in relation to Plaintiff's State Bar proceedings constitute petitioning or conduct incidental to petitioning for the purposes of Noerr-

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
9

1 Pennington. In brief, Plaintiff alleges Defendants "disseminated" or failed to prevent the
2 dissemination of particular information to the State Bar concerning his fitness to practice law.
3 According to the SAC, the dissemination occurred through written statements or answers to
4 questionnaires submitted to the agency and testimony before the State Bar Court during the May,
5 2012, trial. See Freeman, 410 F.3d at 1184 (holding that "assorted documents and pleadings" in
6 which parties "make representations and present arguments to support their request that the court
7 do or not do something" are petitions under Noerr-Pennington).

Applying the Noerr-Pennington doctrine to Plaintiff's federal claims, the court interprets the statutes on which they are based so as to exclude Defendants' alleged conduct from their purview. Defendants' reporting to the State Bar was a petitioning activity protected by the First Amendment and thus immune from suit.

### b. The Sham Exception Does Not Apply

Though not raised by Plaintiff in opposition, the court considers the sham exception to Noerr-Pennington immunity. "The 'sham' exception to Noerr encompasses situations in which persons use the governmental process - as opposed to the outcome of that process - as an anticompetitive weapon." City of Columbia v. Omni Outdoor Advert., Inc., 499 U.S. 365, 380 (1991). Its formulation "depends on the type of governmental entity involved." Kottle, 146 F.3d at 1060. Since California law and Plaintiff's allegations specify the State Bar Court is a judicial agency tasked with conducting "evidentiary hearings on the merits in disciplinary matters" and rendering "written decisions recommending whether attorneys should be disciplined" (Obrien, 23 Cal. 4th at 44), examination of the judicial sham exception is appropriate. See Kottle, 146 F.3d at 1062.

The judicial sham exception recognizes three circumstances falling outside of Noerr-Pennington protection: (1) if the alleged conduct consists of one proceeding, the plaintiff must establish that the proceeding was objectively baseless and a concealed attempt to interfere with the plaintiff's business relationships; (2) if the alleged conduct consists of a series of proceedings, whether they were brought without regard to the merits and for the purpose of injuring the

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
10

plaintiff; and (3) if the alleged conduct consists of making intentional misrepresentations to the court, the proceeding can be deemed a sham if the misrepresentations deprived the proceeding of its legitimacy. Id. at 1060.

Thus, Plaintiff's claims overcome the Noerr-Pennington doctrine only if the allegations show that (1) Defendants' alleged conduct in relation to the State Bar proceedings was objectively baseless and an attempt to stifle Plaintiff's business relationships; (2) Defendants engaged in a pattern of petitions before the State Bar without regard to the merits of those petitions; or (3) Defendants' misrepresentations before the State Bar deprived the proceedings of its legitimacy.

Because the FAC is confined to only one State Bar proceeding, the second ground of the sham exception cannot apply. Nor does the first ground; since the State Bar Court found that Plaintiff should not be admitted to practice law, Defendants' alleged disclosure of negative information about Plaintiff to the State Bar was not objectively baseless. Id. at 1063 ("In the litigation context, the Supreme Court has reminded us that a winning lawsuit is, by definition, not objectively baseless.").

Looking finally at the third ground, the FAC does not demonstrate that Defendants so misrepresented the truth to the State Bar Court that the entire proceeding was deprived of its legitimacy. Plaintiff must overcome a heightened pleading standard to show this, "and that standard 'would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party." Id. (quoting Or. Nat. Res. Council v. Mohla, 944 F.2d 531, 536 (9th Cir. 1991)). Here, though Plaintiff's allegations are many and detailed in several respects, the question of whether or not they plausibly show pervasive misrepresentation directed to the State Bar Court cannot be separated from the allegations and judicially-noticeable documents showing the manner and levels of process Plaintiff was afforded. The determination of a complaint's plausibility does not occur in a vacuum. See Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) ("In all cases, evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense.'").

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
11

The State Bar Court engaged a five-day hearing, where Plaintiff and the State Bar presented testimony, evidence, counter-testimony and counter-evidence. In the decision explaining why Plaintiff did not present sufficient indicia of good moral character for admission, the State Bar Court found the State Bar's witnesses "very credible" but found that Plaintiff was not fully credible. Plaintiff appealed, but the State Bar Review Department sustained the lower court's findings. Plaintiff then petitioned for review in the California Supreme Court and the United States Supreme Court, but those petitions were denied.

In the FAC, it is plain that Plaintiff recasts his various disagreements with the information Defendant's provided to the State Bar Court as a conspiracy of misrepresentation against him, even after he was given a two opportunities to test the record. But that sort of attack does not plausibly demonstrate the illegitimacy of the State Bar proceedings. Furthermore, a finding that these claims satisfy the sham exception would unquestionably chill the exercise of First Amendment Rights of those with information relevant to licensing determinations.

In sum, the federal claims are not excepted from Noerr-Pennington and must be dismissed on that basis.

### c. Plaintiff's Arguments are Unpersuasive

Plaintiff seeks to avoid the effect of the Noerr-Pennington doctrine in two ways, neither of which are successful. First, he raises again his argument that Defendants are barred by res judicata or collateral estoppel simply because Noerr-Pennington was raised by Defendants in the last round of dismissal motions. Not so. The court has already explained why Plaintiff's reasoning on this subject is legally incorrect.

Second, Plaintiff argues Defendants waived the Noerr-Pennington doctrine because of release provisions included in a settlement agreement entered in another action. No. Interpreting the language cited by Plaintiff under the same California principles applicable to any other contractual agreement (Marder v. Lopez, 450 F.3d 445, (9th Cir. 2006)), the reference to "claims" in the release cannot be read to encompass arguments made in response to a later lawsuit initiated by Plaintiff.

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

12

### C. Leave to Amend

The court must now determine whether Plaintiff should again be granted leave to amend. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d 963, 972 (9th Cir. 2010) (internal citation and quotation marks omitted). However, "[a] district court may deny leave to amend when amendment would be futile" (Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1129-30 (9th Cir. 2013)), or for "failure to cure deficiencies by amendments previously allowed." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).

Here, Plaintiff has already amended his complaint once. Though he did so without specific direction from the court on Noerr-Pennington, it is nonetheless important to note, as Plaintiff does, that the doctrine was previously raised by Defendants. Thus, Plaintiff had the benefit of this notice when fashioning the FAC.

Additionally, and in any event, there are no additional facts that would render Plaintiff's federal claims capable of overcoming Noerr-Pennington immunity because they stem from protected petitioning activity that does not fall within the sham exception.

For these reasons, the federal claims will be dismissed without leave to amend.

### D. State-Law Claims

Plaintiff's remaining claims arise under California state law.

The jurisdiction of federal courts is limited, and is only properly exercised over those cases raising federal questions or involving parties with diverse citizenship. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). "[O]nce a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Id. However, a district court may properly decline to exercise supplemental jurisdiction over state-law claims if such claims "substantially predominate[ ] over the claim or claims over which the district court has original jurisdiction" or if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
13

Since this order will resolve the two federal claims asserted in this action, the court will decline supplemental jurisdiction over the state law claims. Those claims will again be dismissed without prejudice. See 28 U.S.C. § 1367(c)(3); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

### E. Motion to Strike

Since all claims are dismissed on other grounds, the court need not reach the merits of the anti-SLAPP motion to strike. Dkt. No. 257. It will therefore be denied as moot. Sikhs for Justice "SFJ", Inc. v. Facebook, Inc., 144 F.3d 1088, 1097 (N.D. Cal. 2015).

## IV. ORDER

Based on the foregoing, the Motions to Dismiss (Dkt. Nos. 254, 255, 259, 261, 294, 295) are GRANTED. The FAC's federal claims are DISMISSED WITHOUT LEAVE TO AMEND. The claims arising under state law are DISMISSED WITHOUT PREJUDICE.

The Anti-SLAPP Motion to Strike (Dkt. No. 257) is DENIED AS MOOT.

All other matters are VACATED and TERMINATED.

Judgment will be entered in favor of Defendants and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: August 25, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:14-cv-05336-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
14